NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0079n.06
Filed: February 1, 2005

## No. 03-4634

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SALLIE POLLARD, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES |
| | ) | DISTRICT COURT FOR |
| v. | ) | THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| STATE FARM FIRE & CASUALTY, | ) | |
| NATIONAL UNION FIRE INS. CO., and | ) | O P I N I O N |
| GENERAL MOTORS CORP., | ) | |
| | | |
| *Defendants-Appellees*. | | |

BEFORE:   GUY and COLE, Circuit Judges, and TARNOW, District Judge[*]

**ARTHUR J. TARNOW, District Judge.**   In this insurance contract case, plaintiff-appellant Sallie Pollard claims that a commercial general liability insurance policy issued to her employer, General Motors, should cover her compensatory damages arising out of an automobile accident that occurred outside the scope of her employment. The district court granted summary judgment to the defendants based

---

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

on a controlling Ohio Supreme Court case, *Westfield Insurance Company v. Galatis*, 797 N.E.2d 1256 100 (Ohio 2003), which was decided after this case was filed. Pollard timely filed an appeal in this Court. For the reasons that follow, we **AFFIRM** the decision of the district court.

## I.

The facts of this case are undisputed. On February 16, 1997, Appellant Sallie Pollard was involved in a car accident with Bernard J. Putnam in Warren, Ohio. Putnam lost control of his vehicle, crossed the highway center-line, and struck Pollard's oncoming vehicle head-on.

Mr. Putnam's insurance policy with Progressive Insurance Company provided for bodily injury liability coverage limits of $25,000/person and $50,000/occurrence. Progressive tendered the maximum payment to Pollard in exchange for the release of Putnam from further liability. Pollard's insurance company, State Farm, signed off on the settlement because Mr. Putnam was uncollectible and judgment proof beyond his coverage limits. In other words, Mr. Putnam was underinsured.

Sallie Pollard's insurance policy with State Farm provided for un/underinsured motorist (UM/UIM) coverage limits of $50,000/person and $100,000/occurrence. State Farm paid Pollard $25,000.

At the time of the accident Pollard was employed by Delphi Packard Electric Systems, which is a subsidiary of General Motors Corporation. In December of 2000, Pollard became aware that commercial liability insurance policies maintained by an employer may provide UM/UIM coverage for an employee, even where the accident

occurred outside the scope of her employment. In December of 2001, Pollard became

aware that General Motors maintained a business auto policy with National Union

Fire Insurance Company. GM's policy with National Union states as follows:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.

The policy lists GM as the named insured and contains an Ohio Uninsured Motorist

Coverage Endorsement form. The relevant policy language states as follows:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.
>
>         \*     \*     \*
>
> Named Insured
> GENERAL MOTORS CORPORATION
>
>         \*     \*     \*
>
> B.     WHO IS INSURED
>
> 1.     You
> 2.     If you are an individual, any "family member"
> 3.     Any one else "occupying" a covered "auto" or a temporary substitute for a covered auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
> 4.     Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another insured.

There is no dispute that the endorsement form in GM's policy with National

Union is identical to the endorsement form that the Ohio Supreme Court considered

in *Scott-Pontzer v. Liberty Mutual Fire Insurance Company*, 710 N.E.2d 1116

(1999). In *Scott-Pontzer*, the Ohio Supreme Court held that a commercial insurance

policy which contained the foregoing language covered employees for compensatory

damages arising out of accidents occurring outside the scope of their employment. *Id*.

On May 10, 2002, Pollard sued National Union Fire Insurance Company in the Court of Common Pleas of Trumbull County, Ohio. Pollard's complaint sought a declaratory judgment that the commercial auto insurance policy issued to her employer, GM, provides UM/UIM coverage for her compensatory damages arising out of the February 16, 1997 accident with Putnam. The case was removed to the U.S. District Court for the Northern District of Ohio. The district court granted General Motors leave to intervene as a defendant. The parties filed cross-motions for summary judgment on August 5, 2003.

Three months after the parties filed their cross-motions for summary judgment, the Ohio Supreme Court issued its decision in *Westfield Insurance Company v. Galatis*, 797 N.E.2d 1256 (Ohio 2003). In *Galatis*, the Ohio Supreme Court severely and explicitly limited its prior decision in *Scott-Pontzer v. Liberty Mutual Fire Insurance Company*, 710 N.E.2d 1116 (Ohio 1999), and held that absent express policy language to the contrary, the Ohio Uninsured Motorist Coverage Endorsement identical to the one contained in the General Motors/National Union policy covers a loss sustained by an employee only if the loss occurred within the scope of her employment:

> Because the employee qualifies as "you" while operating a motor vehicle *on behalf of* the corporation, he is entitled to uninsured motorist coverage. Accordingly, we follow *Scott-Pontzer* to the extent that it held that an employee

in the scope of employment qualifies as "you" as used in CA 2133, and thus, is entitled to uninsured motorist coverage.

We cannot, however, extend this coverage to an employee outside the scope of employment...The *Scott-Pontzer* court properly focused on the term "you," but in so doing confused the employee's status as an individual with the employee's status as an agent of the corporation...*Scott-Pontzer* dramatically departed from *King*'s sound rationale that an employee qualifies as "you" under a policy issued to a corporation only when within the scope of employment.

In *Scott-Pontzer*, this court reasoned that "naming the corporation as the insured is meaningless unless the coverage extends to some person or persons–including to the corporation's employees." However, this statement does not support the untenable extension of insured status to employees outside the scope of employment.

*Galatis*, 797 N.E.2d at 1264-65 (citing *King v. Nationwide*, 519 N.E.2d 1380 (Ohio 1988)) (emphasis in original).

Citing *Galatis*, the district court granted the defendants' motion for summary judgment on November 17, 2003. On December 16, 2003, Pollard filed this appeal. On appeal, Pollard makes three arguments: (1) *Galatis* may not be applied retroactively to bar her claim for benefits; (2) the district court deprived her of due process by denying her an opportunity to be heard on this issue; and (3) *Galatis* improperly deprives her of a right to a remedy.

## II.

This Court reviews a district court's grant of summary judgment *de novo*. *Middleton v. Reynolds Metals Co.*, 963 F.2d 881, 882 (6th Cir. 1992). We also

"review *de novo* a district court's determination of state law." *Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991).

## A.  Retroactive Application of *Galatis*

On appeal, Pollard makes three arguments concerning retroactivity: (1) *Galatis* cannot be applied retroactively because her claim falls under the "vested rights" exception to Ohio's retroactivity doctrine; (2) the Ohio Supreme Court did not intend that *Galatis* apply retroactively; and (3) U.S. Supreme Court law alters the probable course of Ohio's retroactivity doctrine, such that *Galatis* should not apply retroactively in this case.

In *Peerless Electric Company v. Bowers*, 129 N.E.2d 467 (Ohio 1955) the Ohio Supreme Court set forth the law governing retrospective application of an Ohio Supreme Court decision:

> The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision.

*Peerless*, 129 N.E.2d at 468.

The *Peerless* doctrine is strengthened by a presumption of retroactivity.  "In the absence of a specific provision in a decision declaring its application to be prospective only...the decision shall be applied retrospectively as well." *State ex. rel. Bosch v. Indus. Comm.*  438 N.E.2d 415, 418 (Ohio 1982).

**1.**

In this case, Pollard argues that her claim falls within the vested rights exception to the *Peerless* rule because her right to benefits under GM's insurance policy vested under the Ohio Supreme Court's decision in *Scott-Pontzer*.

Pollard's claim for benefits vested, if at all, in February of 1997, more than 2 years prior to the Ohio Supreme Court's decision in *Scott-Pontzer*. Thus, Pollard argues that the *Scott-Pontzer* decision should apply retroactively but that the *Galatis* decision should not. Pollard does not explain this contradiction.

Additionally, in order to demonstrate that she possessed vested rights under *Scott-Pontzer*, Pollard must prove that she detrimentally relied on that decision. In *Galatis*, the Court concluded the application of *Galatis* would not unfairly interfere with the rights of persons with pending claims to UM/UIM coverage:

> No reliance interest will be jeopardized by limiting *Scott-Pontzer*...the overwhelming majority of *Scott-Pontzer* cases are resurrected claims from the years prior to the *Scott-Pontzer* decision. Because no one was aware of this form of uninsured motorist coverage before it was created by that decision, no one could have relied upon it. Finally, the potential that anyone would have reduced his personal uninsured motorist coverage based upon the belief that his employer's insurer, or his family member's employer's insurer, would provide this coverage is practically nonexistent. Thus, there is no individual or societal reliance upon *Scott-Pontzer* outside of the courtroom.

*Galatis*, 797 N.E.2d at 1270-71. In this case, Pollard's complaint and affidavit state that she was not aware of any UM/UIM benefits available through her employer's insurance policy until December of 2001. Therefore, she did not rely on the UM/UIM provision in the commercial policy held by GM.

Additionally, Ohio cases applying *Galatis* recognize that an employee cannot rely upon an insurance contract entered into by her employer and the insurer where she was not aware that she may have been a third-party beneficiary to the insurance contract. For example, in *Parks v. Rice*, 809 N.E.2d 1192 (Ohio App. 2004), the Ohio Court of Appeals held that *Galatis* applied retroactively to bar recovery under an employer's UM/UIM coverage because the injured employee was driving home at the time of his accident and was therefore not acting within the scope of his employment. The employee argued that his rights had arisen or vested under *Scott-Pontzer*. The court rejected that argument:

> The reason why we do not retrospectively apply decisions in a case where contractual rights have arisen or vested rights have been acquired under the prior decision is because courts generally will not disturb the operation of contracts formed in contemplation of and reliance upon law that is later overturned by judicial decision. This is related to the rule that the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties. The contract in question here was not between the [employee] and this insurer, but between the employer and insurer. It could not have been the basis for any reliance on the part of the [employee].

> More importantly as to the [employee's] argument, we are bound to reject it. Immediately after the Ohio Supreme Court decided *Galatis*, it resolved numerous other *Scott-Pontzer*-related appeals that were pending before it. In one of those cases, *German v. Therm-O-Disc, Inc.*, the plaintiff made this same argument in a motion for reconsideration. The Ohio Supreme Court rejected this argument and continued to apply *Galatis* retroactively to *German* and the other cases it resolved.

*Parks*, 809 N.E.2d at 1271.  Under the interpretation of *Galatis* set forth in *Parks*, the appellant is not shielded from the application of *Galatis* by any vested rights in her claim for UM/UIM benefits through her employer.

**2.**

In support of her claim that the Ohio Supreme Court did not intend that *Galatis* apply retroactively, Pollard cites one case, *Fish v. Ohio Casualty Insurance Company*, 802 N.E.2d 149 (Ohio 2004), in which Justice Stratton issued a concurring opinion expressing her view that *Galatis* applies to all pending cases where a "*Scott-Pontzer*" claim has been raised.  One other justice (O'Donnell) concurred in Justice Stratton's opinion. Pollard argues that because the remaining five justices of the Ohio Supreme Court did not concur in Justice Stratton's opinion, it may be presumed that they all are of the view that the *Peerless* doctrine applies to determine the retroactive effect of *Galatis*.  We reject Pollard's argument.

First, the fact that the five justices other than Justices Stratton and O'Donnell did not join the concurrence in *Fish* does not indicate the court's intent to bar retrospective application in *Galatis*. The inference that a majority of the Ohio Supreme Court would disagree with the concurrence is inconsistent with the Ohio Supreme Court's denial of a motion for reconsideration in the *Galatis* case which raised the retroactivity issue.  Further, the Ohio Supreme Court has applied *Galatis* retroactively to at least 90 pending cases, and we have recently recognized that *Galatis* properly applies to cases pending at the time the *Galatis* decision issued.  *See In re Uninsured & Underinsured Motorist Cases*, 798 N.E.2d 1077 (Ohio 2003)

(consolidating approximately 90 pre-*Galatis* cases and applying *Galatis* to all of them); *Posante v. Cambridge Mut. Fire Ins. Co.*, 383 F.3d 407, 408 (6th Cir. 2004).

Finally, under the rule set forth in *Ex Rel Bosch*, *supra*, decisions of the Ohio Supreme Court are presumptively retrospective in their effect unless the Supreme Court explicitly states otherwise.  The *Galatis* opinion does not state that it is to have prospective effect only.   Therefore, there is no basis upon which to dispute its retroactivity.

### 3.

Pollard argues that "U.S. Supreme Court opinions must be taken into account in an effort to ascertain the probable course of future developments in the Ohio doctrine of retroactivity." Thus, Pollard argues that pursuant to *Chevron Oil Company v. Huson*, 404 U.S. 97 (1971), *Galatis* cannot be given retrospective effect because it "announced a new rule of law...[o]verruling the clear past precedent of *Scott-Pontzer* upon which many litigants relied."

Pollard's argument is unpersuasive to the extent that it depends upon Pollard's reliance interest in *Scott-Pontzer*.  Pollard's claim to UM/UIM benefits vested, if at all, at least 2 years prior to *Scott-Pontzer*.  Therefore, Pollard's claim would not be entitled to *Chevron* protection.

More importantly, the U.S. Supreme Court has unambiguously overruled *Chevron*.  In *Harper v. Virginia Department of Tax*, 509 U.S. 86, 97-98 (1993), the Court held:

> Although *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991) did not produce a uniform opinion for the Court, a majority of Justices agreed that a rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law. In announcing the judgment of the Court, Justice SOUTER laid down a rule for determining the retroactive effect of a civil decision: After the case announcing any rule of federal law has "appl[ied] that rule with respect to the litigants" before the court, no court may "refuse to apply [that] rule...retroactively." Justice SOUTER's view of retroactivity superseded "any claim based on a *Chevron Oil* analysis.

*Harper*, 509 U.S. at 96-98. Pollard relies on the Court's division in the *Jim Beam* case for the premise that *Chevron* is still good law. Under *Harper*, Pollard's argument fails. *Galatis* has been given retroactive effect under Ohio and federal law.

### B. Pollard's Due Process Claim

Pollard claims that she was denied due process because the district court did not provide her with an opportunity to be heard on the application of *Galatis* in this case. Whether or not the district court should have allowed further argument is moot as we have concluded Pollard does not possess a property interest in her claim for benefits through her employer.

A district court may grant summary judgment on grounds not presented in a motion for summary judgment without due process implications. In *Hines v. Jay Manufacturing Company*, 850 F.2d 1146 (6th Cir. 1988), this Court stated:

> Where it is clear that there is no genuine issue of material fact, a court may properly grant summary judgment on a ground other than that assigned in the motion. Additionally, "[a]n appellate court can find an

alternative basis for concluding that a party is entitled to summary judgment and ignore any erroneous basis relied upon by the district court, provided it proceeds carefully so the opposing party is not denied an opportunity to respond to the new theory.

*Hines*, 850 F.2d at 1150 (internal citations omitted).

At this point in the litigation, Pollard has had an opportunity to respond to all of the theories at issue. Pollard argued in the district court and in her briefs to this Court that her claim accrued under *Scott-Pontzer*. The retroactivity question has now been fully briefed in this Court.[**] Therefore, Pollard has not been denied an adequate opportunity to be heard.

## C. Pollard's "Right to a Remedy"

Pollard argues that at the time she filed her complaint, she enjoyed a civil right under the Ohio Constitution to the UM/UIM coverage under her employer's automobile policy. Section 16, Article I of the Ohio Constitution states:

> All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.

OHIO CONST. art. I, § 16. As discussed above, Pollard did not have a vested property right in her claim for UM/UIM benefits at the time she filed her lawsuit. Furthermore, the district court afforded Pollard a full opportunity to be heard. Pollard essentially argues that she has the right to have the court ignore *Galatis* and apply *Scott-Pontzer*. We reject her argument.

---

[**]Pollard's counsel notified the Court the morning of oral argument that Pollard waived oral argument.

## III.

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to defendants.